IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ANDREA GAROFOLO,                      )
                                      )
                Plaintiff,            )
                                      )
        v.                            )        1:14CV761
                                      )
CAROLYN W. COLVIN,                    )
Acting Commissioner of               )
Social Security,                      )
                                      )
                Defendant.            )

### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff Andrea Garofolo ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. § 1383(c)(3), to obtain review of a final decision of the Commissioner of Social Security ("Commissioner") denying her Supplemental Security Income under Title XVI of the Act.

Presently before this court are Plaintiff's Motion for Judgment on the Pleadings and accompanying brief (Docs. 12-13), and the Commissioner's Motion for Judgment on the Pleadings and accompanying memorandum (Docs. 17-18). This court also has before it the certified administrative record,[1] and this matter

_____

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 9.)

is now ripe for adjudication.  After a careful consideration of the evidence of record, the decision of the Administrative Law Judge ("ALJ"), and the governing legal standard, this court concludes that the Commissioner's decision should be affirmed.

## I.  BACKGROUND

Plaintiff filed an application for Supplemental Security Income on July 26, 2011, alleging a disability onset date of February 28, 2009.  (Tr. at 168-74, 179.)  The application was denied initially and upon reconsideration.  (Id. at 102-05, 108-17.)  Plaintiff then requested a hearing before an ALJ.  (Id. at 119-26.)  Plaintiff, her counsel, and a vocational expert ("VE") were present at the January 8, 2013. (Id. at 29-56.)  After the hearing, the ALJ determined that Plaintiff was not disabled under the Act.[2]  (Id. at 14-24.)

More specifically, the ALJ concluded (1) that Plaintiff had not engaged in "substantial gainful activity" during the

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." Hancock v. Astrue, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [his] past relevant work; and (5) if not, could perform any other work in the national economy." Id. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. Id.

relevant period, and (2) that Plaintiff's mental impairment ("variously assessed as anxiety disorder, panic disorder, or PTSD"), cervical degenerative disc disease, and right shoulder cuff tendinopathy were severe impairments. (Id. at 16.) However, the ALJ concluded that the disorders did not meet or equal a listed impairment. (Id. at 17.)

The ALJ then determined that Plaintiff had the Residual Functional Capacity ("RFC")[3] to perform medium work, so long as she was also limited to (1) only frequent balancing, kneeling, and crawling, (2) only occasional climbing of ladders, ropes, scaffolds, ramps, or stairs, (3) only occasional stooping or crouching, (4) only occasional reaching overhead with both arms, and (5) only occasional interaction with the public and her coworkers. (Id. at 18.)

The ALJ then concluded that Plaintiff was unable to perform any past relevant work. (Id. at 22.) Next, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines v. Barnhart, 453 F.3d 559, 562 (4th Cir. 2006) (citation omitted). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall v. Harris, 658 F.2d 260, 265 (4th Cir. 1981). "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562–63 63 (citing 20 C.F.R. § 404.1529(a)).

-3-

Plaintiff's age as a "younger individual," her limited education and ability to communicate in English, her work experience, and her RFC, the ALJ found that there were jobs in the national economy that she could perform. (Id. at 22-23.) Accordingly, the ALJ entered a Decision that Plaintiff was not disabled and denied her benefits. (Id. at 23-24.)

On August 1, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (Id. at 1-6.) Plaintiff then initiated this action.

## II. **LEGAL STANDARD**

Federal law authorizes judicial review of the Commissioner's denial of social security benefits. 42 U.S.C. § 405(g); Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Fray v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

-4-

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Maestro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472.

## III. PLAINTIFF'S ASSERTIONS OF ERROR

Plaintiff asks this court to reverse the decision of the Commissioner, and in support of her request, she makes several arguments. First, Plaintiff contends that the ALJ should have

-5-

found that her fibromyalgia and lumbar degenerative disc disease were severe impairments. (Pl.'s Mem. of Law in Supp. of Mot. for J. on the Pleadings ("Pl.'s Br.") (Doc. 13) at 3.) Second, Plaintiff contends that the ALJ failed to adequately consider the medical evidence when determining whether she met or medically equaled Listings 1.02, 1.04, 12.04, and 12.06. (Id.) Third, Plaintiff contends that the ALJ erred in concluding that Plaintiff had the RFC to perform medium work. (Id.) Last, Plaintiff contends that the ALJ erred by not giving controlling weight to the opinions of her treating physician and treating psychiatrist. (Id.)

## IV. ANALYSIS

### A. Any Errors in the Step Two Analysis are Harmless

First, Plaintiff contends that the ALJ erred at step two by failing to find that her cervical degenerative disc disease and fibromyalgia were severe. (Pl.'s Br. (Doc. 13) at 3.) Step two requires the ALJ to determine if the claimant has any severe medically determinable impairments. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). "An impairment or combination of impairments is not severe if it

-6-

does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a).[4]

Here, at step two, the ALJ analyzed the issue of Plaintiff's fibromyalgia and cervical degenerative disc disease as follows:

> I find that the claimant has the following non-severe impairments: "mild" early degenerative disc disease of the lumbar spine; . . . [and] fibromyalgia[.]
>
>      . . . .
>
> The claimant's low back pain has been noted to be intermittent and medically managed. Her treating Orthopedic specialist indicated recently in October 2012 that these symptoms "largely resolved by end of 2010 with Skelaxin and Tramadol" (Exh. 12F). . . .
>
> As to fibromyalgia, I am giving the claimant the benefit of the doubt in finding this condition to be a non-severe impairment rather than a non-medically determinable impairment. In October 2012, an in-house "pain specialist" at Triangle Orthopedics, Dr. Zimmerman, assessed the claimant with fibromyalgia. However, this assessment was not made by a Rheumatology specialist and appears to be based entirely on the claimant's subjective pain complaints, since treatment notes indicate the claimant "endorsed the whole thing" on the pain diagram. Significantly though, there is no indication that the claimant had any tender points, she has never had any positive ANA results, and prior lab results have been normal (including when they screened for rheumatoid arthritis or lupus). At the prior visit with this same pain specialist 8 months earlier in February 2012, the

---

[4] Examples of basic work activities include:(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b).

claimant reported "she feels like her fibromyalgia is
under better control" and "finds these medications
(Tramadol and Skelaxin) really effective" (Exh. 10F).
Thus it would appear that the symptoms are medically
managed.

After a careful review of the record, I find that the
above-noted impairments are acute, episodic, medically
managed, were successfully treated within 12 months,
and/or cause no more than minimal limitations in the
claimant's ability to perform work activities.
(Ex.(s) 3F, 12F, 14F, 15F). Therefore, they are not
"severe" within the meaning of the statute.

(Tr. at 16-17, 436, 428.)[5]

---

[5] The Fourth Circuit has explained:

Fibromyalgia is a rheumatic disease with . . .
symptoms[ ] including "significant pain and fatigue,"
tenderness, stiffness of joints, and disturbed sleep.
Doctors diagnose fibromyalgia based on tenderness of
at least eleven of eighteen standard trigger points on
the body. "People with rheumatoid arthritis and other
autoimmune diseases, such as lupus, are particularly
likely to develop fibromyalgia." Fibromyalgia "can
interfere with a person's ability to carry on daily
activities." "Some people may have such a severe case
of fibromyalgia as to be totally disabled from
working, but most do not."

Stup v. UNUM Life Ins. Co., 390 F.3d 301, 303 (4th Cir. 2004)
(internal citations omitted) abrogated on other grounds, Metro.
Life Ins. Co. v. Glenn, 554 U.S. 105 (2008). Social Security
Ruling 12-2p provides "guidance on how [the Administration]
develop[s] evidence to establish that a person has a medically
determinable impairment (MDI) of fibromyalgia (FM), and how [the
Administration] evaluate[s] FM in disability claims and
continuing disability reviews under titles II and XVI of the
Social Security Act (Act)." Social Security Ruling, SSR 12-2p;
Titles II and XVI: Evaluation of Fibromyalgia, 2012 WL 3104869,
at *1 (July 25, 2012).

-8-

Here, the ALJ's analysis appears well-supported and error free for the reasons described, and the evidence cited, above. Plaintiff counters that Dr. Jianjun Ma, a consultant, and Dr. Eugenia Zimmerman, a treating physician, found that Plaintiff's fibromyalgia would limit her. (Pl.'s Br. (Doc. 13) at 15.) However, the ALJ partially discounted the medical opinions of both doctors and in doing so cited substantial evidence.[6] (Tr. at 21.) And, in any event, as evinced in the remainder of this Memorandum Opinion and Order, any step two error as to consideration of these impairments is harmless given that the ALJ identified other severe impairments at step two and properly considered all impairments, both severe and non-severe, in formulating Plaintiff's RFC assessment. (Tr. at 16, 18-22.) See Ashby v. Colvin, Civil Action No. 2:14-674, 2015 WL 1481625, at *9 (S.D. W. Va. Mar. 31, 2015) (collecting cases stating that error at step two was harmless when ALJ appropriately considering limiting effects of impairments in the RFC

---

[6] Plaintiff does not contest the ALJ's evaluation of Dr. Ma's opinion and only contests the evaluation of Dr. Zimmerman's opinion, which is discussed elsewhere herein.

-9-

analysis).  Plaintiff has therefore demonstrated, at most, harmless error.[7]

## B.   **The Step Three Analysis is Supported by Substantial Evidence**

Plaintiff next contends that the ALJ erred by failing to adequately consider the medical evidence when determining whether she met or medically equaled Listings 1.02, 1.04, 12.04, and 12.06. (Pl.'s Br. (Doc. 13) at 15.)  The Listings are examples of medical conditions that "ordinarily prevent a person from working" in any capacity.  Sullivan v. Zebley, 493 U.S. 521, 533 (1990); see also 20 C.F.R. § 416.925(a).  A claimant's severe impairment "meets" a listing if it "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the [one-year] duration requirement." 20 C.F.R. § 416.925(c)(3); Zebley, 493 U.S. at 530-32.  An impairment or combination of impairments medically equals a listing when it is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 416.926(a)-(b).

An adult claimant whose severe medically determinable impairment satisfies a listing is presumed disabled regardless

---

[7] Nor, as the Commissioner correctly points out, does Plaintiff point to any additional credible functional limitation that was not already included in the RFC for a limited range of medium work.

of his or her vocational profile.  20 C.F.R. § 416.925(c).
Thus, proving "listing-level severity" requires the claimant to
demonstrate a greater degree of physical or mental impairment
than the baseline statutory standard of being unable to perform
"substantial gainful activity." Zebley, 493 U.S. at 532.  A
claimant who can satisfy a listing, however, "is entitled to a
conclusive presumption that he is disabled."  Radford v. Colvin,
734 F.3d 288, 291 (4th Cir. 2013) (citations omitted). Thus, the
ALJ generally must identify the relevant listed impairments and
"compare[] each of the listed criteria" to the medical evidence
in the claimant's record.  Cook v. Heckler, 783 F.2d 1168, 1173
(4th Cir. 1986).

### 1.   Listings 12.04 and 12.06

Listings 12.04 and 12.06, for affective disorders and
anxiety-related disorders, require a claimant to prove that her
impairment(s) satisfies the criteria set forth in both Parts A
and B of each listing. See 20 C.F.R. pt. 404, subpt. P, app. 1,
§§ 12.04, 12.06.  Part A sets forth the qualifying symptoms of
each listing for affective disorders and anxiety/panic attack
disorders, respectively. Id. In Part B of each listing, the
claimant's impairment(s) must result in at least two of the
following: marked restriction of activities of daily living;
marked difficulties in maintaining social functioning; marked

difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[8] Id.

Here, in pertinent part, Plaintiff argues that she satisfies the Part B criteria for Listings 12.04 and 12.06 because she was diagnosed with PTSD, panic disorder with agoraphobia, and anxiety, and she implies that she experiences marked difficulties in all functional areas. (Pl.'s Br. (Doc. 13) at 15-19.) However, as the ALJ explained in the decision, the record only shows that Plaintiff had mild restrictions in her activities of daily living and her concentration, persistence, or pace; moderate difficulties in social functioning; and that she had not experienced any episodes of extended decompensation. (Tr. at 17 citing Tr. at 264-77, 315-37, 342-431, 436-41, 456-99, 514-17.) The court agrees with the Commissioner's characterization of this argument, in that rather than dispute the ALJ's reasoning, Plaintiff merely argues for an alternative interpretation of the record.

Nevertheless, the ALJ's analysis of this issue is supported by substantial evidence. In explaining that Plaintiff's activities of daily living were only mildly impaired, the ALJ

---

[8] Plaintiff has not argued that she satisfied the "C" criteria and so the court will not address it.

noted that Plaintiff's physicians observed that she was appropriately groomed and dressed. (Tr. at 17, see, e.g., Tr. at 270, 411, 428, 472, 475.) Plaintiff also independently tended to her personal care. (Tr. at 17, see, e.g., Tr. at 201-08, 265, 376, 417, 421.) With respect to social functioning, the ALJ also reasonably determined that Plaintiff had moderate difficulties. (Tr. at 17, see, e.g., Tr. at 265, 352, 371, 376.)

Likewise, with regard to concentration, persistence, or pace, the ALJ reasonably determined that Plaintiff had mild difficulties. (Tr. at 17 citing Tr. at 415-27.) For example, on January 7, 2011, Plaintiff's attention/concentration were "unremarkable" (Tr. at 271) and, on August 2, 2011, they were normal. (Tr. at 351.) Plaintiff was also able to repeat six digits forward and four digits backwards and her memory was good. (Tr. at 418.)

As for episodes of decompensation, the ALJ properly determined that Plaintiff has experienced no episodes of decompensation of extended duration, or otherwise. (Tr. at 17 citing 264-77, 315-37, 342-431, 436-41, 456-99, 514-17.) Nothing on the record indicates Plaintiff was hospitalized due to psychiatric concerns.

Finally, Plaintiff failed to identify any evidence rebutting any of the ALJ's finding regarding her functional abilities as it relates to the "B" criteria. (Pl.'s Br. (Doc. 13 at 17-19.) Plaintiff has failed to demonstrate error here, material or otherwise.

### 2. Listing 1.04

The same is true for Listing 1.04, which provides as follows:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

-14-

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

Here, at step three, the ALJ analyzed Listing 1.04 as follows: "[t]he claimant's impairments do not meet or equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, in particular Listing[] 1.04 . . . . I respectfully decline to find that the claimant meets Listing[] 1.04 . . . . (Tr. at 17.)

This is a cursory explanation. However, a cursory explanation in step three is satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the ALJ's conclusion. See Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) citing Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). A brief explanation at step three is acceptable where the ALJ's discussion of the evidence at other steps of the evaluation make clear that the ALJ considered the records relevant to the step three analysis. See id.; McCartney v. Apfel, 28 F. App'x 277, 279-80 (4th Cir. 2002). "Where the ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion in his Step 3 analysis." Kiernan v. Astrue, Civil Action No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013).

Here, in setting Plaintiff's RFC, the ALJ stated:

-15-

Regarding the claimant's musculoskeletal impairments, repeat examinations have not shown any significant abnormalities aside from some tenderness to palpation and some reduced range of motion. Moreover, objective findings did not demonstrate nerve root compromise or stenosis, in terms of her spine. Also, an MRI of the right shoulder did not reveal any tear. The claimant's strength, reflexes, and sensation, as well as gait, were normal. Additionally, her straight leg raise test was negative. She was also able to lift and carry objects. Only conservative treatment was offered for the claimant's musculoskeletal impairments, including physical therapy medications. The claimant reported obtaining relief with medications and exercising in a pool.

(Tr. at 20.)

These findings are sufficient to meet the ALJ's obligation to explain why Listing 1.04 is not satisfied. By way of example,[9] the ALJ essentially found that the medical record lacked any evidence that Plaintiff suffered from nerve root or spinal cord compromise, which as indicated is a prerequisite for Listing 1.04(A)-(C). Plaintiff points to no such evidence, and the court has found none on the record. Given that such evidence is an essential prerequisite for meeting any iteration of a 1.04 listing, and given that the ALJ was correct in concluding that there was no such evidence on the record, the court concludes that the ALJ sufficiently analyzed this listing. It would make little sense to remand this issue so that the ALJ

---

[9] The example provided above is non-exhaustive. There are a number of additional reasons why Plaintiff has failed to satisfy this listing.

could move the relevant findings on this issue into the step

three section of his decision.

### 3. Listing 1.02

Listing 1.02 governs major dysfunction in a joint and is

[c]haracterized by gross anatomical deformity (e.g.,
subluxation, contracture, bony or fibrous ankylosis,
instability) and chronic joint pain and stiffness with
signs of limitation of motion or other abnormal motion
of the affected joint(s), and findings on appropriate
medically acceptable imaging of joint space narrowing,
bony destruction, or ankylosis of the affected
joint(s). With:

A. Involvement of one major peripheral weight-bearing
joint (i.e., hip, knee, or ankle), resulting in
inability to ambulate effectively, as defined in
1.00B2b;

or

B. Involvement of one major peripheral joint in each
upper extremity (i.e., shoulder, elbow, or wrist-
hand), resulting in inability to perform fine and
gross movements effectively, as defined in 1.00B2c.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02.

"Inability to ambulate effectively" is defined as follows:

b. What We Mean by Inability To Ambulate Effectively

(1) Definition. Inability to ambulate effectively
means an extreme limitation of the ability to walk;
i.e., an impairment(s) that interferes very seriously
with the individual's ability to independently
initiate, sustain, or complete activities. Ineffective
ambulation is defined generally as having insufficient
lower extremity functioning (see 1.00J) to permit
independent ambulation without the use of a hand-held
assistive device(s) that limits the functioning of
both upper extremities. (Listing 1.05C is an exception
to this general definition because the individual has

-17-

the use of only one upper extremity due to amputation
of a hand.)

(2) To ambulate effectively, individuals must be
capable of sustaining a reasonable walking pace over a
sufficient distance to be able to carry out activities
of daily living. They must have the ability to travel
without companion assistance to and from a place of
employment or school. Therefore, examples of
ineffective ambulation include, but are not limited
to, the inability to walk without the use of a walker,
two crutches or two canes, the inability to walk a
block at a reasonable pace on rough or uneven
surfaces, the inability to use standard public
transportation, the inability to carry out routine
ambulatory activities, such as shopping and banking,
and the inability to climb a few steps at a reasonable
pace with the use of a single hand rail. The ability
to walk independently about one's home without the use
of assistive devices does not, in and of itself,
constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b).

Here, in her decision, the ALJ made no reference to Listing
1.02.  This raises the question of whether the ALJ had any
obligation to do so in the first instance.  The duty to identify
relevant listed impairments is triggered when there is "'ample
evidence in the record to support a determination' that the
claimant's impairment meets or equals one of the listed
impairments." Ketcher v. Apfel, 68 F. Supp. 2d 629, 645 (D. Md.

-18-

1999) (quoting Cook, 783 F.2d at 1172).[10]  There was not ample
evidence here that would trigger the ALJ's duty to specifically
reference Listing 1.02 and its various elements and
permutations.  As Respondent correctly points out, no care
provider ever found a complete inability to perform fine and
gross movements effectively, which is a prerequisite for
satisfying 1.02(B). Likewise, no medical provider ever found
Plaintiff unable to ambulate, which is a prerequisite for
satisfying 1.02(A).  And, in fact, consultative examiner Dr. Ma
found that Plaintiff's gait was symmetric, albeit "slow," and
that she did not require any assistive device to ambulate. (Tr.
at 21, 423.)

    Moreover, even if the duty to discuss this listing was
triggered, the ALJ satisfied the obligation.  This is because
the ALJ properly found that Plaintiff's musculoskeletal
impairments failed to show significant abnormalities, aside from
some tenderness and some reduced range of motion, an MRI of the

---

    [10] See, e.g., Mills v. Colvin, No. 5:13-CV-432-FL, 2014 WL
4055818, at *5 (E.D.N.C. Aug. 14, 2014) ("[W]here there is no
such probative evidence suggesting that plaintiff meets or
equals Listing 1.02 or Listing 1.04, the ALJ was not required to
engage in a full explanation of such listings."); Vogel v.
Comm'r, Soc. Sec., Civil Case No. GLR-13-911, 2014 WL 722105, at
*1 (D. Md. Feb. 24, 2014) (concluding that the ALJ did not err
in failing to address Listings 1.04 and 1.02 in the absence of
"ample evidence" sufficient to meet these listings); Johns v.
Comm'r, Soc. Sec. Admin., Civil No. SAG-13-1136, 2014 WL 309694,
at *2 (D. Md. Jan. 24, 2014) (same).

right shoulder did not reveal any tear, and her strength, reflexes, sensation, and gait were normal. (Tr. at 20, <u>see e.g.</u>, 423-24, 514.) Plaintiff has failed to demonstrate any meaningful error at step three.

## C. <u>The ALJ's Determination that Plaintiff can Perform Medium Work is Supported by Substantial Evidence</u>

Plaintiff contends that the ALJ's conclusion that she can perform medium work[11] is unsupported by substantial evidence, in large part because the ALJ ostensibly erred in weighing the medical opinion of Plaintiff's treating physician, Dr. Eugenia Zimmerman. (Pl.'s Br. (Doc. 13) at 20-21.)

The "treating physician rule," 20 C.F.R. § 416.927(c)(2), generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence." 20 C.F.R. § 416.927(c)(2). But not all treating sources are created equal. An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors"

---

[11] Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds" and requires an individual to be on her feet for up to six hours during an eight-hour workday. 20 C.F.R. § 416.967(c); Social Security Ruling 83-10, Titles II and XVI: Determining Capability to do Other Work—the Medical-Vocational Rules of Appendix 2 ("SSR 83-10"), 1983 WL 31251, at *5.

-20-

to determine how much weight to give it. 20 C.F.R. § 416.927(c)(2)-(6). These factors include: (i) the frequency of examination and the length, (ii) nature and extent of the treatment relationship; (iii) the evidence in support of the treating physician's opinion; (iv) the consistency of the opinion with the record as a whole; (v) whether the opinion is from a specialist; and (vi) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. Id.

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. 20 C.F.R. § 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); accord Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that

issue remains for the Commissioner alone.   20 C.F.R.

§ 416.927(d).

Here, the ALJ stated the following about Dr. Zimmerman:

In a medical source statement completed in July 2011,
the claimant's pain clinic specialist, Eugenia
Zimmerman, M.D., opined that the claimant could work
in a part-time capacity approximately three days per
week, due to her fibromyalgia. [She] also indicated
that she was limited to less than sedentary exertion
with no bending, lifting, or carrying.  In a
subsequent statement completed in October 2012, Dr.
Zimmerman restated that the claimant was limited to
sedentary exertion with postural and manipulative
limitations.  (Ex.(s) 4F, 11F).  Little weight is
afforded these opinions, as they are inconsistent with
the treatment reports and objective findings on
examination.  Some weight is afforded Dr. Zimmerman's
opinion regarding the claimant's manipulative
limitations, as they are consistent with the
diagnostic studies performed on the claimant's
shoulder.

(Tr. at 21.)

Dr. Zimmerman's conclusion that Plaintiff could only work

part-time, three days a week, and could only perform sedentary

work due to her fibromyalgia was unsupported by the record

evidence.  (Tr. at 21, 341, 433.)  First, there is a question as

to whether Plaintiff was properly diagnosed with fibromyalgia.

(Tr. at 16.)  Dr. Zimmerman, who is a pain-specialist, not a

rheumatologist, did not indicate in her records that Plaintiff

had any positive "trigger points" to support a finding of

fibromyalgia.  (Tr. at 16, 41, 411.) Plaintiff's labs were also

normal with no signs of ankylosing spondylitis, rheumatoid

-22-

arthritis, or lupus. (Tr. at 436.) And, in any event, Dr.
Zimmerman's conclusion regarding Plaintiff's limitations from
her fibromyalgia is contradicted by the fact that Plaintiff
herself said her alleged condition was "under better control"
with her medications (Tramadol and Skelaxin), which were "really
effective for fibromyalgia," when she met with Dr. Zimmerman in
February 2012. (Tr. at 17, 428.)

Additionally, Dr. Zimmerman's findings that Plaintiff could
only stand/walk two hours in an eight-hour day is also
unsupported by the record evidence. Plaintiff's MRI of her
lumbar spine in March 2010 showed only mild early degenerative
disk and joint disease with no evidence of stenosis or
spondylosis. (Tr. at 411.) Plaintiff's x-rays of her right hip
and pelvis in June 2010 were also normal. (Tr. at 411.) On
February 9, 2012, Plaintiff also reported no difficulty walking.
(Tr. at 430.) Plaintiff's MRI of her cervical spine in October
2011 showed only a small broad-based disc osteophyte complex,
but no evidence of central canal or foraminal stenosis. (Tr. at
437.) Additionally, Plaintiff's muscle strength was 5/5 in all
of her upper and lower extremities; her reflexes and sensations
were intact; and her straight leg test was negative bilaterally.
(Tr. at 423-24.) All this supports the ALJ's conclusion that
Plaintiff could perform a limited range of medium work.

-23-

Finally, the ALJ's RFC determination is supported by Plaintiff's activities of daily living (addressed above) and the findings of two state agency physicians who likewise determined that Plaintiff could perform a reduced range of medium work. (Tr. at 20-21, 72-73, 75-77, 88, 90-92.)

**D.** **The ALJ's Assessment of Dr. Moffet's Opinion is Supported by Substantial Evidence**

Last, Plaintiff asserts that the ALJ erred by not giving the opinion of Plaintiff's treating psychiatrist, Dr. Mark Moffet, controlling weight. (Pl.'s Br. (Doc. 13) at 21-23.)

The ALJ weighed Dr. Moffet's opinion as follows:

> In a medical source statement completed in October 2012, the claimant's psychiatrist, Mark A. Moffet[], M.D., opined that the claimant's mental impairments caused marked restrictions in her activities of daily living and social functioning, as well as moderate difficulties in maintaining concentration, persistence, or pace with repeated episodes of decompensation. (Ex.(s) 13F, 16F). Little weight is afforded Dr. Moffet's opinion, as it is not supported by his treatment reports, in particular the claimant's normal mental health status examinations.

(Tr. at 21.)

Here, the ALJ reasonably afforded less weight to Dr. Moffet's opinions of disability. First, Dr. Moffet completed a checkbox form and did not provide substantive support for this

-24-

opinion. (Tr. at 442-54.) Courts have noted the limited probative value of such conclusory checkbox forms.[12]

The ALJ also afforded this form less weight because it was inconsistent with the benign observations Dr. Moffet made. (Tr. at 21, 469-74.) This does not support Dr. Moffet's restrictive assessment of Plaintiff's mental functioning, and Plaintiff has also failed to identify evidence to support Dr. Moffett's assessment. (Pl.'s Br. (Doc. 13) at 23.) Plaintiff has failed to demonstrate any material error here.

## IV. CONCLUSION

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is legally correct and supported by substantial evidence.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for judgment on the pleadings (Doc. 12) is **DENIED**, that the Commissioner's motion for judgment on the pleadings (Doc. 17) is **GRANTED**, and that this action is **DISMISSED WITH PREJUDICE**.

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

---

[12] See Leonard v. Astrue, No. 2:11CV00048, 2012 WL 4404508, at *4 (W.D. Va. Sept. 25, 2012); McGlothlen v. Astrue, No. 7:11-CV-148-RJ, 2012 WL 3647411, at *6 (E.D.N.C. Aug. 23, 2012); Bishop v. Astrue, C/A No. 1:10-2714-TMC, 2012 WL 951775, at *3 n.5 (D.S.C. Mar. 20, 2012); see also 20 C.F.R. § 416.927(c)(3).

This the 21st day of March, 2016.

_____
United States District Judge